Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5316 | **DATE** | 3/14/2002 |
| **CASE TITLE** | NG vs. City of Chgo | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendant's motion (Doc 10-1) for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| SCT | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 17

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH NG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 01 C 5316 |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
MAR 1 5 2002

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Before the court is Defendant the City of Chicago's ("the City") motion for summary judgment. For the following reasons, the motion is granted.

## BACKGROUND

The following facts are undisputed unless otherwise noted. Plaintiff Kenneth Ng ("Ng") is an Asian-American male who is over forty years old. Ng has been employed by the City since approximately July 1976 to the present as a Building Inspector in the Department of Buildings, Bureau of Demolition ("DOB"). Since at least 1995, Ng has been a Supervisor of Building Inspectors in the DOB. It is the DOB's practice that, when a structure is at over 25% depreciation, an applicant for a building permit to do construction work on the structure must submit architectural plans with the application for a building permit. Ng is aware of this practice, as he has worked for the DOB for over twenty-five years.

17

In August 2000, Ng signed off on a building permit application for a building at 8234 South Kimbark ("Kimbark building"). The depreciation of the Kimbark building was 53% at the time Ng signed off on the building permit application and the structure had been significantly damaged by fire.[1] The applicant subsequently attempted to obtain a building permit for the Kimbark building. Assistant Commissioner Brian Lynch ("Lynch") reviewed the DOB file for the Kimbark building and discovered that Ng had signed off on the building permit application. Lynch told the applicant that he could not obtain a building permit without submitting architectural plans. Lynch removed Ng's signature from the application and voided the application. Lynch subsequently informed Ng that he should not have signed off on the permit application for the Kimbark building.

In April 2001, the City suspended Ng for three days. In a suspension notice to Ng, the City stated that its reason for suspending Ng was that, because Ng signed off on a permit application for the significantly damaged Kimbark Building, Ng violated the DOB practice concerning structural depreciation. The suspension notice further informed Ng that his conduct constituted a violation of City of Chicago's Personnel Rules at Section XVIII, which requires the City's employees to perform their duties in a manner which furthers the efficiency and best interests of the City, and which results

---

[1] Though Ng denies this fact in his response to the City's Rule 56.1 Statement of Facts, he does not support his denial with any citations to the record. Accordingly, the court deems this fact admitted. Local Rule 56.1; Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir. 2000); Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 689 (7th Cir. 2000); Stewart v. McGinnis, 5 F.3d 1031, 1034 (7th Cir. 1993).

in the highest level of public trust and confidence in municipal government. The violations specifically identified in the suspension notice included: insubordinate actions, including failure to carry out a rule, order or directive related to the performance of an employee's duty; incompetence or inefficiency in the performance of the duties of the position; violating any departmental regulations, rules or procedures; and conduct unbecoming an officer or public employee. The City's Personnel Rules give department heads the authority and responsibility "to take disciplinary action against any employee whose conduct does not further the efficiency and best interest of the City."

Ng filed a Request for Review of Disciplinary Action with the DOB. In May 2001, the DOB upheld Ng's suspension through this review process. Ng has since filed a grievance through his collective bargaining unit in connection with this suspension. He filed his complaint in this case on July 10, 2001. In his complaint, he claims that the City discriminated against him on the basis of age, race, and national origin when it issued a three day suspension to him. This court has jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA"), and the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("§ 1981").

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant

of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed.R. Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325.

Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant." Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record, we must draw all reasonable inferences in favor of the nonmovant; however, "we are not required to draw every conceivable inference from the record – only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). With these legal principles in mind, the court turns to the instant motion.

## DISCUSSION

We note preliminarily that Ng has admitted that he does not believe that the City discriminated against him on the basis of his national origin. As such, the court grants

the City's motion with regard to this claim. The court now turns to Ng's claims of race discrimination under Title VII and Section 1981 and his claim of age discrimination under the ADEA.

The analytical framework this court must apply in deciding the City's motion is fundamentally the same under the ADEA, Title VII, and Section 1981. Hoffman v. Primedia Special Int. Pub., 217 F.3d 522, 524 (7th Cir. 2000) (stating framework applied in age discrimination case brought under ADEA); Hughes v. Brown, 20 F.3d 745, 746 (7th Cir. 1994) (stating applicable framework in race discrimination case brought under Title VII); Alexander v. Wisconsin Dept. of Hlth. and Family Services, 263 F.3d 673, 681-82 (7th Cir. 2001); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998); Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 176 (7th Cir. 1996) (stating race discrimination claim brought under Section 1981 is reviewed in same manner as race discrimination claim brought under Title VII). Ng may prove discrimination either by presenting direct evidence of discrimination or by applying the McDonnell Douglas burden-shifting framework. Rabinovitz v. Pena, 89 F.3d 482, 486 (7th Cir. 1996). Here, Ng applies the McDonnell Douglas framework.

Under the McDonnell Douglas burden-shifting method of proof, Ng must first make out a prima facie case of discrimination. Rabinovitz, 89 F.3d at 487. Once established, his prima facie case creates a rebuttable presumption of discrimination, and the burden of production shifts to the City to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. Once the City meets this burden, Ng must demonstrate that the City's articulated reason is pretextual. Id. Applying this

framework to the instant case, the court finds that Ng has not presented a genuine issue for trial with regard to any of his discrimination claims.

First, Ng has failed to make out a prima facie case of discrimination. With respect to both age discrimination and race discrimination, those elements are: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff performed his job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that similarly situated employees outside the plaintiff's classification were treated more favorably. Hoffman, 217 F.3d at 524; Hughes, 20 F.3d at 746. Although it is undisputed that he satisfies the first and the third elements, all four elements of a prima facie case must be met to raise an inference of discrimination and shift the burden to the City. Hoffman, 217 F.3d at 524; Hughes, 20 F.3d at 746. With regard to the fourth element, Ng has not identified any individuals outside his classifications – Asian and above forty years old – who engaged in conduct similar to Ng's but were not disciplined. Indeed, Ng admits that he cannot identify any non-Asian building inspectors who have engaged in similar conduct and who did not receive discipline. Nor does he have any personal knowledge or other evidence of any building inspectors younger than him who have committed similar infractions but were not disciplined. Based on Ng's complete failure of proof on the fourth element of his prima facie case, his case cannot survive the City's motion for summary judgment.[2]

---

[2] The court does not discuss here whether Ng has met the second element of his prima facie case because much of the reasoning with regard to this element parallels the analysis of whether Ng can show the City's explanation is pretextual. See e.g., Fuka, 82 F.3d at 1404. For many of the reasons stated in that portion of this opinion, Ng cannot show that, with regard to the Kimbark building permit, he performed his job satisfactorily.

Even if Ng had met all the elements of his prima facie case, however, his claims of discrimination would not make it past summary judgment. The City asserts that Ng was suspended because he violated the DOB's practice of not signing off on a building permit application when the building had a depreciation greater than 25% without requiring the submission of architectural plans. This violation, in turn, constituted a violation of the City's Personnel Rules. Therefore, the City has advanced a legitimate explanation for suspending Ng and Ng can only overcome the City's motion if he presents evidence that the City's explanation is pretextual.

The issue of pretext "does not address the correctness or desirability of reasons offered for employment decision." Richter v. Hook-SupeRx, Inc., 142 F.3d 1024, 1029-30 (7th Cir. 1998). "Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." Richter, 142 F.3d at 1029-30; see Mora v. Chicago Tribune, 57 F. Supp. 2d 626, 635 (N.D. Ill. 1999). Pretext is "more than a mistake on the part of the employer; pretext 'means a lie, specifically a phony reason for some action.'" Richter, 142 F.3d at 1029-30 (quoting Wolf v. Buss (America) Inc., 77 F.3d 914, 919 (7th Cir. 1996)). An employer need only supply an "honest reason, not necessarily a reasonable one." Flores v. Preferred Tech. Grp., 182 F.3d 512 (7th Cir. 1999). Ng may show pretext by proving that the City's explanation: (1) had no basis in fact, or (2) was not the real reason, or (3) the reason stated was insufficient to warrant the adverse job action. Campbell v. Dominick's Finer Foods, Inc., 85 F. Supp. 2d 866, 873 (N.D. Ill. 2000). In essence, to show pretext, Ng must demonstrate either that the City's stated reason is unworthy of belief or that the reason for his suspension was his age or his race. Richter, 142 at 1030.

Applying these principles, the court finds that Ng has not shown that the City's proffered explanation for his suspension is pretextual. First, Ng admits that the depreciation of the Kimbark building was 53% at the time he signed off on the permit. He also admits that the Kimbark building was significantly damaged at that time. He further admits that DOB practice requires the submission of architectural plans before a building inspector can sign off on a permit for construction work on a building with more than 25% depreciation. By his own admissions, Ng violated DOB practice by signing off on a building permit for a building with a depreciation of 53% when there were no architectural plans. Even if he did not admit that the Kimbark building had a depreciation of 53% when he signed off on the permit, he does not present any evidence of any DOB practice allowing building inspectors to sign off on permits involving heavily damaged and depreciated structures before a formal assessment of depreciation is made under any circumstances. Thus, Ng cannot show that his conduct was consistent with DOB's practices.

Additionally, Ng has presented no evidence linking the City's decision to discipline him to any discriminatory animus. Ng admits that his direct supervisor and his supervisor's supervisor have never made any remarks to him that would indicate that they treated him differently based on his race. He knows of no racially-based statements made about him by anyone at the DOB. Indeed, Ng admits that the basis of his race and age discrimination claims is that, in his opinion, there could have been no other reason for the discipline. Thus, Ng's case is based solely on his disagreement with the City's decision to discipline him and, as explained above, this alone is not a basis for finding the City's reason pretextual, even if the City was mistaken in

disciplining Ng. Accordingly, the court finds that Ng has failed to show that the City's explanation for disciplining Ng is pretextual.

Because he has not made out his prima facie case of discrimination and because he has not shown that the City's explanation for his suspension was pretextual, Ng's case does not survive the City's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is granted.

Charles P. Kocoras
United States District Judge

Dated:    March 14, 2002